but now 'I am really having to focus.' He continued to type, and said, 'I think it's safe to say this isn't as intense as work would be...

After a few minutes, client [Mr. Stokes] said to Jim [Mr. Marcotte], 'I could probably do this [seated typing] for ten-fifteen minutes before I get bleary-eyed. I started out OK, but now I'm losing my focus. I could type this page in thirty minutes, then lie down.' Client and Jim agreed the office simulation would end. [*emphasis added*].

117. On April 22, 2004, Ms. Holt wrote counsel for Mr. Stokes apologizing for the delay in rendering a decision on Mr. Stokes' claim and indicating that a decision would be forthcoming in 30 days.

118. On April 29, 2003, counsel for Mr. Stokes wrote Ms. Holt requesting a copy of the FCE report as well as CIGNA's vocational report.

119. On April 30, 2004, Ms. Holt faxed counsel for Mr. Stokes a copy of the FCE report.

120. On May 21, 2004, counsel for Mr. Stokes sent Ms. Holt a submission enclosing medical and vocational literature contesting the relevance, practice and lack of efficacy of FCE testing. The May 21, 2004 submission also responded to Mr. Marcotte's FCE results.

121. On June 4, 2004, counsel for Mr. Stokes wrote Ms. Holt enclosing a copy of a letter from Dr. Cohen responding to the FCE results. Dr. Cohen indicated in relevant part:

What appears to be absent from this decision making is an appreciation of the variability of Mr. Stokes' capabilities. While there may be episodic days where he could complete a work day at a sedentary job, it is also clear that this is unpredictable and more often than not, he regularly has days where he is markedly disabled, and barely able to get out of bed much less perform at even a sedentary job. . . .

I continue to find the decision to end his disability payments not justified by an accurate assessment of his condition as it is at present.

**Final Denial**

122. On June 10, 2004, Ms. Holt wrote counsel for Mr. Stokes upholding the decision to terminate Mr. Stokes' benefits.

123. Ms. Holt's decision was based solely upon the results of the FCE.

124. In her June 10, 2004 letter, Ms. Holt stated:

    You requested we review his claim, and you submitted some information. Most all of the information was duplicate information, or information that would not impact our decision.

125. Ms. Holt's statement in this regard ignored the innumerable documents submitted by Mr. Stokes in support of his claim.

126. Ms. Holt further indicated in her June 10, 2004 letter that Mr. Stokes' appeal was reviewed by CIGNA's Physician Advisor.

127. On July 7, 2004, Ms. Holt faxed counsel for Mr. Stokes indicating:

    You requested we send you a copy of our physician's review of his file. This was not a written report. We just discussed the file with him.

128. Finally, in her June 10, 2004 termination letter, Ms. Holt noted:

    Nothing contained in this letter should be construed as a waiver of any rights of defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

129. Ms. Holt's reservation of future defenses is contrary to ERISA's procedural and substantive safeguards.

130. On July 29, 2004, counsel for Mr. Stokes wrote Ms. Holt outlining the unreasonableness of her decision to deny Mr. Stokes' benefits, the information submitted by Mr. Stokes that was ignored by the Defendants in their decision to

24

terminate benefits, and the procedural violations of ERISA inherent in the Defendants' decision to reserve future defenses.

131. On July 30, 2004, Ms. Holt wrote counsel for Mr. Stokes responding to her letter of July 29, 2004. In her letter, Ms. Holt indicated:

> Even though Sweet Productions advised that he was not working there, he was observed being there all day for several days. The notes indicate he has a desk, computer and telephone there.

132. Contrary to Ms. Holt's statements, Mr. Stokes did not have a desk, computer or a telephone at Sweet Productions. Mr. Stokes had access to a computer or a telephone if needed, but did not have his own space or own office at the facility.

### Request for Documents

133. On September 18, 2003, Mr. Stokes, through counsel, requested a complete copy of Mr. Stokes' claim file in the possession of CIGNA and Connecticut General.

134. On September 23, 2003, Mr. Stokes received a portion of his claim file from CIGNA and Connecticut General.

135. On October 20, 2003, counsel for Mr. Stokes wrote Katie Perich of CIGNA, requesting the documents missing from Mr. Stokes' claim file.

136. Ms. Perich did not respond to this letter.

137. On October 20, 2003, counsel for Mr. Stokes wrote James Bonetti regarding his surveillance of Mr. Stokes and whether he observed Mr. Stokes' actually working.

138. On November 10, 2003, Doryne Storms, Regional Claim Manage for Cigna, wrote counsel for Mr. Stokes, indicating in relevant part:

> While we don't have an acknowledgement from anyone at Sweet Productions that Mr. Stokes was working there, he was observed to go

here on a regular basis, during normal business hours, and stay there for a minimum of 7 to 9 hours each observance.

139. On October 28, 2003, counsel for Mr. Stokes wrote Ms. Perich requesting again, a copy of Mr. Stokes' plan documents.

140. Ms. Perich did not respond to this letter.

141. On November 12, 2003, counsel for Mr. Stokes wrote Ms. Perich again, requesting the documents missing from Mr. Stokes' claim file.

142. Ms. Perich did not respond to this letter.

143. On November 12, 2003, Claire R. Miller of CIGNA wrote counsel for Mr. Stokes responding to her October 20, 2003 request for information. Ms. Miller did not disclose the missing documents in her November 12, 2003 letter, as mandated by ERISA.

144. On November 17, 2003, counsel for Mr. Stokes wrote Ms. Miller responding to her letter and again requesting the documents missing from Mr. Stokes' claim file.

145. Ms. Miller did not respond to the November 17, 2003 letter.

146. On December 10, 2003, counsel for Mr. Stokes wrote Ms. Miller again, requesting the missing documents from Mr. Stokes' claim file.

147. That same day, counsel for Mr. Stokes wrote Ms. Miller requesting for the fourth time, a copy of CIGNA's complaint to the New York State Insurance Fraud Department regarding Mr. Stokes.

148. On December 19, 2003, counsel for Mr. Stokes wrote Ms. Miller following up on her requests for information.

149. Ms. Miller did not respond to the December 19, 2003 letter.

150. On December 21, 2003, counsel for Mr. Stokes wrote Pattie Holt, the appeals coordinator in charge of Mr. Stokes' appeal, requesting a complete copy of Mr. Stokes' claim file.

151. On January 21, 2004, counsel for Mr. Stokes wrote Ms. Miller requesting a complete copy of Mr. Stokes' claim file as well as the information submitted to the New York fraud division about Mr. Stokes.

152. On January 22, 2004, Ms. Miller sent counsel for Mr. Stokes a brief fax directing her to Ms. Holt for any further requests.

153. On March 11, 2004, counsel for Mr. Stokes wrote Ms. Holt again requesting a complete copy of Mr. Stokes' claim file.

154. On March 16, 2004, Ms. Holt wrote counsel for Mr. Stokes informing her that "Mr. Stokes' claim is currently with our Vocational Rehabilitation Counselor to set up the Functional Capacity Evaluation." Ms. Holt further indicated that she would forward counsel for Mr. Stokes any information in Mr. Stokes' claim file that had not been previously sent to Mr. Stokes.

155. On March 17, 2004, counsel for Mr. Stokes spoke with Ms. Holt regarding a copy of CIGNA's report of Mr. Stokes to the New York Insurance Department, Fraud Bureau. Ms. Holt indicated during this conversation that she would attempt to locate a copy of the report for Mr. Stokes' review.

156. On March 22, 2004, six months after Mr. Stokes' original request for a copy of CIGNA's fraud complaint, Ms. Holt wrote counsel for Mr. Stokes enclosing a copy of the report sent to the New York Insurance Department, Fraud Bureau.

157. On June 17, 2004, counsel for Mr. Stokes requested a complete copy of Mr. Stokes' claim file from Ms. Holt.

158. On June 18, 2004, Ms. Holt faxed counsel for Mr. Stokes indicating that: "The only information we have received since we sent you a copy of his file, other than the FCE, is information you sent us.

159. On June 24, 2004, counsel for Mr. Stokes wrote Ms. Holt indicating that several documents regarding CIGNA's review of Mr. Stokes' claim remained outstanding, including but not limited to, internal notes, guidelines, records, records of telephone calls, emails, medical reviews, etc. In addition, counsel for Mr. Stokes requested a copy of the Physician Review referenced in Ms. Holt's final denial letter.

160. Ms. Holt did not respond to this letter.

**NY Department of Fraud**

161. On October 27, 2003, Cigna's Special Investigation Unit reported Mr. Stokes to the State of New York Insurance Department Fraud Bureau for "suspected fraud."

162. After numerous requests for the copy of the report sent to the Insurance Department, Ms. Holt finally sent counsel for Mr. Stokes a copy of the report on March 22, 2004.

163. On March 30, 2004, counsel for Mr. Stokes responded to CIGNA's complaint, with a detailed packet of information refuting each allegation.

164. In May 2004, the Insurance Division determined that Mr. Stokes had not committed fraud.

165. On May 11, 2004, counsel for Mr. Stokes wrote Ms. Holt indicating that the State of New York Insurance Department transferred CIGNA's claim of fraud against Mr. Stokes to the consumer protection department to investigate CIGNA's conduct. Counsel for Mr. Stokes enclosed a copy of the complaint notice with her letter.

**May 2003 Disability Check**

166. On September 22, 2003, counsel for Mr. Stokes wrote Ms. Perich regarding Mr. Stokes' missing May 2003 disability income check.

167. CIGNA agreed to reimburse Mr. Stokes for his May 2003 disability benefit.

168. To date, CIGNA has not reimbursed Mr. Stokes for his May 2003 disability benefit check, which was never paid.

**Social Security Disability Income Benefits**

169. Mr. Stokes also currently receives Social Security Disability Income ("SSDI") benefits as a result of the debilitating symptoms he experiences due to HIV/AIDS.

**Summary**

170. Mr. Stokes remains disabled to this day as a result of the debilitating symptoms of HIV/AIDs, severe side-effects of his medications, cardiomyopathy, several types of chronic headaches and gastrointestinal problems.

171. Mr. Stokes has exhausted his administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

172. The Defendants failed to provide Mr. Stokes with a full and fair review of his claim for benefits.

173. Any discretion to which Defendants may claim it is entitled under the Plan is negated by its failure to provide Mr. Stokes with an explanation as to its adverse action and a full and fair review of his claim for benefits.

174. The Defendants have failed to their burden of establishing that Mr. Stokes' condition had changed to such a degree that he was no longer totally disabled under the terms of the Plan.

175. The self-serving nature of Connecticut General's decision that Mr. Stokes is no longer disabled is illuminated by the fact that Mr. Stokes's condition has not changed, but in fact, has only worsened, since Connecticut General first accepted liability on his claim for benefits.

176. The self-serving nature of the Defendants' decision to deny Mr. Stokes' benefits is further illuminated by its reliance upon selected pieces of the surveillance data to terminate Mr. Stokes' benefits. In particular, the Defendants conducted weeks of surveillance of Mr. Stokes. However, the decision to terminate Mr. Stokes' benefits was based upon a misinterpretation of Mr. Stokes' activities during the three days he spent at Sweet Productions.

177. The decision to deny Mr. Stokes's benefits was wrongful, unreasonable, irrational, contrary to the substantial evidence, contrary to the terms of the Plan and contrary to law.

178. Connecticut General was influenced by its financial conflict of interest, as both the administrator of the plan and the payor of benefits thereunder, when it denied Mr. Stokes's benefits.

179. Due to the unlawful denial of benefits under ERISA, Mr. Stokes has lost his rightful long-term disability benefits.

180. Mr. Stokes has also suffered emotional distress and an exacerbation of his physical condition as a result of Unum's actions.

181. Mr. Stokes has also lost his position with Price Waterhouse as a result of the wrongful termination of his benefits. With the loss of his position, Mr. Stokes has also lost his health insurance coverage and other employee benefits.

182. Due to the unlawful denial of benefits under ERISA, Mr. Stokes has also lost the use of his long-term disability benefits.

183. Having exhausted the administrative procedures provided by the Defendants, Mr. Stokes now brings this action.

## FIRST CAUSE OF ACTION
### (Enforcement of Terms of Plan
### Action for Unpaid Benefits)
### (ALL DEFENDANTS)

184. Mr. Stokes realleges each of the paragraphs above as if fully set forth herein.

185. The Plan is a contract.

186. Mr. Stokes has performed all of his obligations under the contract.

187. 29 U.S.C. § 1132(a)(1)(B) states that:

A civil action may be brought ---

(1) by a participant or beneficiary -

(A) for the relief provided for in subsection (c) of this section, or

> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

188. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

189. The Defendants unlawfully denied Mr. Stokes's benefits in part by: (1) rejecting, without any basis, the substantial evidence supporting Mr. Stokes's claim for disability; and (2) denying Mr. Stokes a full and fair review of their decision to deny his benefits.

190. In accordance with 29 U.S.C. §1132, Mr. Stokes is entitled to be paid benefits under the Plan based upon his disabled status from and after August 2003, and continuing into the present.

191. The Defendants have refused to provide Mr. Stokes with these disability benefits and is, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

192. As a direct and proximate result of this breach, Mr. Stokes has lost the principal and the use of his rightful LTD benefits. Mr. Stokes has also lost his position at Price Waterhouse and all associated employee benefits.

## SECOND CAUSE OF ACTION
### (Attorneys' Fees and Costs)
### (ALL DEFENDANTS)

193. Mr. Stokes realleges each of the paragraphs above as if fully set forth herein.

194. Under the standards applicable to ERISA, Mr. Stokes deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

195. The Defendants have the ability to satisfy the award.

196. Mr. Stokes's conduct of this action is in the interests of all participants suffering from physical conditions who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

197. The Defendants acted in bad faith in denying Mr. Stokes's benefits under the Plan.

198. The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1)   Declare, adjudge and decree that Mr. Stokes is entitled to ongoing LTD benefits as calculated under the terms of the Plan.

(2)   Award Mr. Stokes the full amount of unpaid benefits under the Plan to which he is entitled, together with such pre-judgment interest as may be allowed by law.

(3)   Order that the Defendants make restitution to Mr. Stokes in the amount of any losses sustained by Mr. Stokes in consequence of the wrongful conduct alleged herein, together with prejudgment interest.

(4) Award Mr. Stokes the costs of this action and reasonable attorneys' fees; and

(5)   Award such other relief as the court deems just and reasonable.

Dated: September 10, 2004                    Respectfully submitted for the Plaintiff,

                                             By: _____
                                                 Mala M. Rafik
                                                 BBO No. 638075
                                                 ROSENFELD & RAFIK, P.C.
                                                 44 School Street, Suite 410
                                                 Boston, MA 02108
                                                 617-723-7470